[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 16, 2005
THOMAS K. KAHN
CLERK

_____

No. 02-15600

_____

D.C. Docket No. 02-00298 CR-C-W

UNITED STATES OF AMERICA

Plaintiff-Appellant,

versus

REGINALD LAMAR SHELLEY

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(February 16, 2005)**

Before TJOFLAT, BARKETT and HILL, Circuit Judges.

HILL, Circuit Judge:

I.

On September 23, 2001, Reginald Shelley was lawfully arrested following a traffic stop. The arresting officer asked Shelley whether he had any drugs or weapons in his car, and Shelley stated that he did not. When the officer conducted a search of the car incident to the arrest, however, he discovered both a gun and some marijuana under the front seat. As an ex-felon,[1] Shelley was prohibited from possessing a gun by 18 U.S.C. 922(g).[2] Shelley then told the officer that the gun belonged to his wife and that he did not know to whom the marijuana belonged.

Several months later, an agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF) contacted Shelley, and Shelley agreed to come to the agent's office to give his side of the story. The agent advised Shelley of his *Miranda* rights at the outset of the interview. Shelley then told the agent that he owned two vehicles—a car, which he normally drove, and a truck, which his wife normally

---

[1] Shelley was convicted of two counts of possession of cocaine in an Alabama state court on August 31, 2001 (i.e., a little over three weeks before his September 23 arrest).

[2] The statute provides,
> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g).

drove.  Shelley claimed that his wife kept a gun in the truck for protection but that the night before he was arrested he moved the gun from the truck to the car because he anticipated driving the truck to "the Footwash"[3] the next day.  When the truck would not start the next morning, Shelley took the car, forgetting that the gun was under the seat.  Thus, according to Shelley's signed, handwritten statement, when the arresting officer asked him whether there were any drugs or weapons in the car, he "told him no" because he "really forgot [he] put that gun in

_____

[3] The Footwash is a large festival held every fourth weekend in September in Hale County, Alabama.  Over 100,000 people from all over the United States attend annually.  The festival has a religious origin, tracing its roots to the Fairhope Benevolent Society, but it "has evolved into much more."  University of Alabama African American Studies Program, *Footwash; An Alabama Black Belt Festival*, at http://www.bama.ua.edu/~aast/foot/wash.htm (last modified Dec. 13, 2002).

> The parking lots usually resemble an oversized tailgate party. . . .
>
> . . . .
> . . . Vendors are selling almost everything—food, jewelry, clothing, bootleg CDs and DVDs, lap dances—anything that can fit in a booth or a tent. Large quantities of alcohol are being sold and displayed. . . .
>
> . . . .
> A lot of people gamble at the Footwash.  There are all sorts of games from craps to poker[,] [a]lthough[] joining in . . . can be intimidating if you don't know how to play. . . .
>
> Scantily clad women walk around advertising the more erotic forms of entertainment. . . .
>
> Local law enforcement usually is not present on the private property where the Footwash is held . . . .  Even though there aren't police, there are several men walking around the property with guns.  Some people say these men are working as the event's security guards, but others aren't so sure.  Shootings and fights are rumored to occur late at night.

University of Alabama African American Studies Program, *What Happens at Footwash?*, at http://www.bama.ua.edu/~aast/foot/whahappn.htm (last modified Dec. 5, 2002).

that car knowing I am an ex felony [sic]."

Shelley was indicted and charged with possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). Before trial, Shelley's attorney filed a motion in limine seeking to prohibit the Government from making any reference to the marijuana found under Shelley's seat on the ground that such evidence was not relevant to any issue in this case charging only possession of a firearm and would be highly prejudicial to the defendant. The district court granted the motion.

At trial, the Government called two witnesses—the arresting officer and the ATF agent who interviewed Shelley.[4] The arresting officer testified that at the time of the arrest he asked Shelley whether there were any weapons in the car and that Shelley replied that there were not. Because of the court's pretrial order, however, the officer made no mention of drugs in his trial testimony. The ATF agent then took the stand, recounted his conversation with Shelley, and then read Shelley's signed, handwritten statement, including the portion that stated, "[The arresting officer] ask me did I have any drugs or weapons. I told him no."

_____

[4] Shelley stipulated that the firearm had traveled in interstate commerce. He also stipulated that he had been convicted of a crime punishable by a term of imprisonment exceeding one year, and the court instructed the jury to that effect, but it did not specify the nature of the conviction. The jury became aware that Shelley's prior convictions were drug offenses only because Shelley's lawyer had already told them so during his opening statement, stating, "[Shelley] has two prior felonies. Those are drug-related charges. He has an addiction. He had an addiction. And he is in a halfway house, and he has completed a program of sobriety which we will show you a certificate. He has done that. He has completed his program."

After the Government rested, Shelley took the stand to testify to the same story he gave the ATF agent: The gun belonged to his wife, but he put it in his car the night before he was arrested because he anticipated driving the truck that day. Then, when the truck wouldn't start, he drove the car instead, forgetting that the gun was underneath the seat. On cross-examination, the prosecution asked Shelley whether there was "something else" under the seat when he was arrested.

The defense objected and moved for a mistrial. The court sustained the objection and retired the jury. After hearing argument on the motion, the court reviewed its pretrial order and stated, "Let's bring the jury in. This case is over." The court then told the jury, "I am dismissing the case as a sanction." A few days later, the court entered an order styled "Judgment of Acquittal." The order stated, "As a sanction, the Court has granted the defendant's motion for judgment of acquittal. The case is hereby DISMISSED with prejudice, and the defendant is DISCHARGED." The Government now appeals this order.

II.

Judgment of Acquittal – Reviewable?

Because the district court styled its order a judgment of acquittal, we must first determine whether we have jurisdiction to hear this appeal. Ordinarily, the Double Jeopardy Clause of the United States Constitution bars the Government

5

from appealing a judgment of acquittal. *United States v. Torkington*, 874 F.2d 1441, 1444 (11th Cir. 1989). "That bar applies, however, only where the judgment represents a ruling on the merits of some or all of the factual elements of the offense charged." *Id.* (internal quotation marks omitted). Furthermore, "the trial judge's characterization of his own action cannot control the classification of the action." *United States v. Scott*, 437 U.S. 82, 96, 98 S. Ct. 2187, 2197, 57 L. Ed. 2d 65 (1978) (internal quotation marks omitted). "Where the court, before the jury returns a verdict, enters a judgment of acquittal . . ., appeal will be barred only when it is plain that the District Court evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." *Id.* at 97, 98 S. Ct. at 2197 (alterations and internal quotation marks omitted).

In this case, the district court's order did not represent a ruling on the merits of the factual elements of the offense charged.[5] Rather, the court determined that the Government had violated the pretrial ruling that the marijuana evidence was inadmissible and dismissed the case "as a sanction." We faced this exact issue in *United States v. Torkington*, 874 F.2d 1441 (11th Cir. 1989). There, we held that

---

[5] The only ruling the district court made on the factual elements of the offense was at the close of the Government's case-in-chief. At that time, Shelley moved for a judgment of acquittal. The court denied the motion, stating that Shelley "decided on his own that he would go down and give a statement, and that statement has been received in evidence, and the jury may very will decide, based on what he did, that he is guilty." The district court thus ruled that the evidence the Government had adduced was sufficient to sustain a conviction.

6

the Double Jeopardy Clause did not bar the Government's appeal because it was "clear that the court did not base its decision on the resolution of any of the factual elements necessary for conviction." *Id.* at 1444. We reach the same conclusion here. Because the district court clearly did not rule on the merits of the case, the mere fact that it labeled its order a "judgment of acquittal" does not render it unappealable or preclude retrial.

### III.

### Double Jeopardy?

Alternatively, Shelley argues that the Double Jeopardy Clause precludes the appeal and subsequent retrial because the Government provoked his motion for a mistrial. Ordinarily, when "a defendant successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution." *Scott,* 437 U.S. at 93, 98 S. Ct. at 2195 (emphasis omitted). "Such a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *Id.* If, however, a mistrial results from governmental conduct that "is intended to 'goad' the defendant into moving for a mistrial," the defendant may "raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon v.*

7

*Kennedy*, 456 U.S. 667, 676, 102 S. Ct. 2083, 2089, 72 L. Ed. 2d 416 (1982). But this exception is a narrow one. In *Kennedy*, the Court made clear that it is limited to cases in which the Government actually <u>intended</u> to provoke a mistrial and thereby "subvert the protections afforded by the Double Jeopardy Clause." *Id.* Mere "overreaching" or "bad faith" does not implicate double jeopardy unless the prosecutor actually intended to provoke the defendant's motion. *Id.* at 674-75, 102 S. Ct. at 2089. Thus, if "the prosecutorial conduct culminating in the termination of the first trial . . . was not so intended by the prosecutor, that is the end of the matter for purposes of the Double Jeopardy Clause." *Id.* at 679, 102 S. Ct. at 2091.

In the instant case, the prosecutor pursued a line of questioning regarding the "something else" under the seat which he was prepared to assert did not violate the court's pretrial order because he made no mention of marijuana. After the court sustained Shelley's objection and retired the jury, the prosecutor explained that he intended only to highlight the fact that Shelley disclaimed all knowledge of how one "object" (the marijuana) ended up under the front seat of his car but testified that he had placed the gun in the same place. He had argued—in response to the pretrial motion in limine and repeated the argument in response to Shelley's objection and motion for a mistrial—that this possible inconsistency undermined

Shelley's credibility. He asserted that he could pursue this issue without identifying the "object" under the seat as marijuana. The court, however, concluded that the jury would necessarily infer that the "object" was drugs about which the arresting officer had questioned him and for which Shelley had been convicted. *See supra* note 4. In response, the prosecutor, although continuing to maintain that he had not violated the court's ruling, assured the court that he would "simply stay away from that" issue in the future. In short, the prosecutor argued that he had not violated the court's order, contested the defense's motion for a mistrial, and even assured the court that he would "stay away" from the issue in the future. There is thus nothing in the record to suggest that the prosecutor intended to provoke a mistrial, and "that is the end of the matter for purposes of the Double Jeopardy Clause." *Kennedy*, 456 U.S. at 679, 102 S. Ct. at 2091. Therefore, as in *Torkington*, we conclude that "[h]owever the district court's order is characterized, . . . this Court has jurisdiction to entertain the government's appeal . . . ." 874 F.2d at 1444.[6]

---

[6] 18 U.S.C. § 3731 provides in part:
In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information . . . except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
. . . .
An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a

IV.

*In limine* Order – Appropriate?

We need not tarry long to decide whether the district judge ruled correctly in the order *in limine*. We conclude that it was not an abuse of the trial judge's discretion. If the presence of marijuana might be argued as having some attenuated materiality to the charge of possession of a firearm, the prejudice to the defendant clearly appears. It is the province of the trial judge to weigh any materiality against any prejudice and, unless the judge's reading is "off the scale," his discretion is not abused.

There are two reasons why we need not reach the merits of this case. First, a mistrial was declared, the jury was dismissed and the proceedings ended. If we were to conclude that the mistrial was improperly ordered, we cannot "un-order" it. It is a historical fact, not correctable by even the unquestioned power of this court. The government does not assert the mistrial order as error.

---

person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

It further provides that its "provisions . . . shall be liberally construed to effectuate its purposes." *Id.* By enacting this section, "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States v. Wilson*, 420 U.S. 332, 337, 95 S. Ct. 1013, 1019, 43 L. Ed. 2d 232 (1975). In other words, § 3731 confers "jurisdiction . . . to review decisions in criminal cases adverse to the government to the extent not prohibited by the Double Jeopardy Clause of the Fifth Amendment." *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989).

Second, assuming that the presence of the marijuana was, as we believe, not material, and the mistrial properly ordered, the district court's judgment of acquittal was not justified on grounds of prosecutorial misconduct.

V.

Prosecutorial Misconduct?

"A district court may dismiss an indictment pursuant to the federal courts' supervisory power. However, 'dismissal of an indictment for prosecutorial misconduct is an extreme sanction which should be infrequently utilized.'" *United States v. White*, 846 F. 2d 678, 693 (11th Cir. 1988); *see also United States v. Pabian*, 704 F. 2d 1533, 1536 (11th Cir. 1983); *Torkington*, 874 F.2d at 1445 n. 1. We reviewed the prosecutor's conduct in Section III above. While we agree with the district judge that the question put was not consistent with the order *in limine*, the prosecutor had an arguable basis for it. We cannot find that, in this case, the prosecutor engaged in the sort of egregious, flagrant misconduct that would justify the dismissal of the indictment.

The judgment of acquittal is REVERSED. The dismissal of the case with prejudice is REVERSED and the case is REMANDED to the district court for trial following the declared mistrial.

TJOFLAT, Circuit Judge, specially concurring:

I concur in the court's judgment and Parts I-III and V of the majority opinion; I dissent from Part IV of the opinion, which concludes that the district judge did not abuse his discretion in excluding evidence of the marijuana found under the seat of Shelley's car. It is clear that this evidence was relevant and that its probative value was not substantially outweighed by any danger of unfair prejudice. Therefore, its exclusion was an abuse of discretion. I do not address this ruling in some vain attempt to undo a mistrial order that is now historical fact. See ante at 10. Even though, as the majority notes, there are ample alternative grounds for reversing the district court, it is important to address this issue for two reasons. First, when we remand this case to the district court for a new trial, the same evidentiary dispute will inevitably arise again. Second, if we review the district court's order entering a judgment of acquittal and dismissing the indictment without mentioning the evidentiary ruling that led to it, we will give the impression that the evidentiary ruling was correct. I think that it was not—indeed, I think that it was a clear abuse of discretion—for reasons that I explain in Part I. In Part II, I briefly explain that the district judge should have, at a minium, realized that the admissibility of the evidence might be affected by how the trial unfolded and, therefore, he should have reserved judgment on the issue

12

when it was raised pretrial.[7]

I.

Under Federal Rule of Evidence 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  In United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc),[8] we applied Rule 404(b) in a case similar to Shelley's.  Postal inspectors suspected Beechum, a substitute postman, of "rifling" the mails and, to test him, planted an 1890 silver dollar in a letter in a mailbox on his route.

---

[7] At this point in the case, there was some suggestion that the court might revisit its ruling later.  The Assistant U.S. Attorney argued,

> The defendant was the only person in the car.  Right next to the gun was found what appeared to be marijuana. . . . [T]hat would ordinarily be irrelevant, but for the fact that the defendant volunteered to the officer, well, that's my wife's gun.  I don't know whose marijuana it is.  Now the government suggests that goes to the defendant's credibility, particularly should he elect to testify.

The court responded, "Well, I doubt that I am going to allow that evidence in. . . . [T]he only thing that the government has to prove in this case is that the defendant possessed a firearm."  Unfortunately, the Government never asked the district court to revisit this ruling and instead, by asking the defendant on cross-examination about the "something else" under his seat rather than the marijuana, attempted to make the same point without violating the ruling.  I concur in the majority's determination that there was "an arguable basis" for this approach, ante at 11; but it would have been better for the Government to directly ask the court to revisit or clarify the order in limine.  Of course, given what transpired after the question about the "something else" was asked, it appears that such a request would have been futile.

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

13

Beechum took the bait. He was arrested leaving work at the end of the day, and he was charged with unlawfully possessing property that he knew to be stolen from the mails. At the time of the arrest, postal inspectors also found two credit cards in Beechum's wallet. Neither was issued to Beechum and both had been mailed several months earlier to addresses on routes he serviced. Beechum moved to exclude the two cards as irrelevant and prejudicial; however, because it appeared that the primary issue at trial would be whether Beechum intended to unlawfully possess the silver dollar, the district court denied the motion on the ground that the cards were relevant to that issue—that is, the fact that Beechum possessed the cards for several months tended to make it more likely that he also intended to possess the silver dollar. Accordingly, the Government introduced the cards as part of its case-in-chief. Beechum then testified in his own defense that the silver dollar fell out of a letter as he removed it from the mailbox and that he put it in his pocket so that he could return it to his supervisor later. On cross-examination, over Beechum's objection, the Government questioned him about the two credit cards. The jury convicted Beechum, and he appealed. See id. at 903-05.

On appeal, we framed the primary issue as "whether the district court properly allowed the credit cards to be admitted as extrinsic offense evidence going to the issue of Beechum's intent to possess the silver dollar unlawfully." Id.

14

at 905. We answered this question in the affirmative and established a two-part

test[9] for determining whether "extrinsic offense evidence" should be admitted

under Rule 404(b): first, the evidence must be "relevant to an issue other than the

defendant's character," and, second, it "must possess probative value that is not

substantially outweighed by its undue prejudice and must meet the other

requirements of rule 403."[10] Id. at 911.

> As to step one, we elaborated:
>
> Where the issue addressed is . . . intent . . . , the relevancy of the
> extrinsic offense derives from the defendant's indulging himself in
> the same state of mind in the preparation of both the extrinsic and
> charged offenses. The reasoning is that because the defendant had
> unlawful intent in the extrinsic offense, it is less likely that he had
> lawful intent in the present offense.

Id. Because Shelley stipulated that he was a convicted felon and that the gun had

traveled in interstate commerce, the only contested issue was whether he "was in

knowing possession" of the gun. United States v. Deleveaux, 205 F.3d 1292,

---

[9] The United States Supreme Court endorsed the Beechum analysis in Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988). In United States v. Miller, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc), and other cases, we have conducted the analysis in three steps rather than two by considering the question whether there is sufficient evidence that the defendant in fact committed the extrinsic offense as a separate step. Here, as in Beechum, I simply address this question within the step-one relevance analysis.

[10] Federal Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

15

1296-97 (11th Cir. 2000) ("To establish a violation of § 922(g)(1), the government must prove . . . (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce."). Shelley's defense was that he did not knowingly possess the gun because he put it under the seat of his car the night before he was arrested and then forgot all about it; however, Shelley also claimed to have no idea how the marijuana ended up in the same place. A reasonable jury certainly could have disbelieved Shelley's claim regarding the marijuana, especially since he was arrested soon after leaving "the Footwash," which Shelley's own lawyer described as a "wild place," "[k]ind of like an old-fashion Woodstock kind of thing." If Shelley knew that the marijuana was under the seat, his story that he forgot that the gun was also there is less plausible. If he handled the marijuana at any time during his day at the Footwash, then one would suspect that he also saw the gun and thus knowingly possessed it. Of course, Shelley was free to insist that he did not know from whence the marijuana came, but the jury would have been just as free to disbelieve him. Thus, the marijuana and Shelley's inability to explain its presence are directly relevant to, and admissible on, the issue of intent because they clearly have some "tendency to make [it] more probable" that he knowingly possessed the

gun.[11]  Fed. R. Evid. 401.

Of course, this inference "is valid only if an offense was in fact committed and the defendant in fact committed it."  Beechum, 582 F.2d at 912.  Therefore, to establish relevance under step one of the Beechum analysis, "the Government must offer proof demonstrating that the defendant committed the offense."  Id. at 913.  Under Federal Rule of Evidence 104(b), the Government need not convince the court beyond a reasonable doubt or even by a preponderance of the evidence; rather, the court should decide this issue against the Government "only where the jury could not reasonably find" that the defendant committed the offense.  Id. (quoting Wright & Graham, Federal Practice & Procedure: Evidence § 5054, at 269 (1977)); accord Huddleston v. United States, 485 U.S. 681, 686-91. 108 S. Ct. 1496, 1499-1502, 99 L. Ed. 2d 771 (1988) (citing Beechum).  In the instant case, it is clear that there was sufficient proof of the extrinsic offense.  The marijuana was

_____

[11] Beechum is admittedly not on all fours with respect to step one of that case's two-step analysis.  In Beechum, the charged offense and the extrinsic offense were both unlawful possession of property stolen from the mails; therefore, the extrinsic offense was relevant on the theory "that because the defendant had unlawful intent in the extrinsic offense, it [was] less likely that he had lawful intent in the [charged] offense."  582 F.2d at 911.  In contrast, there ordinarily would be no reason to think that a defendant intended to possess a gun simply because he apparently intended to possess marijuana.  In this case, however, the Government's evidence that Shelley intended to possess marijuana that was under the front seat of his car does tend to make it more likely that he also intended to possess a gun that was next to the marijuana under the front seat of his car, thus bringing this case within the principle of Beechum.  In other words, if the arresting officer had discovered the marijuana in the trunk of the car rather than under the front seat next to the gun, the evidence ordinarily would shed no light on Shelley's intent with respect to the gun and would have been properly excluded as irrelevant.

found under the seat of Shelley's car. Shelley admitted that he ordinarily drove the car and that he put the gun under the seat where the marijuana was found, and at the time of the arrest there were no passengers in the car. Therefore, a jury could reasonably find that Shelley unlawfully possessed the marijuana.

Under step two of the Beechum analysis, we consider whether the relevant extrinsic offense evidence should be excluded under Rule 403. In this case, the only significant Rule 403 question is whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice." Given the significance of the evidence to proving knowing possession, it is clear that the probative value of the evidence was not outweighed by the danger of unfair prejudice, much less substantially so. Without this evidence, as in Beechum, the intent "issue would have been decided wholly by the jury's assessment of the credibility of the[] witnesses." Beechum, 582 F.2d at 917. Indeed, in this case the extrinsic offense evidence was the only evidence that contradicted Shelley's story, whereas in Beechum the defendant's supervisor also testified on the issue of intent. Id. The excluded evidence was therefore of substantial "incremental probity." See id. at 914 ("It is the incremental probity of the evidence that is to be balanced against its potential for unfair prejudice."). Indeed, "[t]he incremental probity of the extrinsic offense evidence approaches its intrinsic value," id. at 916, and its

18

exclusion "may have been determinative." Id. at 917. As we emphasized in Beechum, "[i]t is derogative of the search for truth to allow a defendant to tell his story of innocence without facing him with evidence impeaching that story. A basic premise of our adversary system of justice is that the truth is best attained by requiring a witness to attain contrary evidence if he can." Id. at 909. This is precisely what happened here: the district court's ruling allowed Shelley to claim innocence without having to face evidence that a jury could reasonably interpret as inconsistent with that claim.

Although evidence that Shelley possessed a small amount of marijuana has some potential for unfair prejudice, such prejudice should not have been severe, and certainly would not have been enough to substantially outweigh the evidence's probative value. To begin with, the evidence would have shown only that Shelley had a very small amount of marijuana in his car, not that he was a dangerous drug lord. In a very similar case, the Sixth Circuit expressed doubt that the "possession of a relatively modest amount of marijuana, even if thought to be for distribution," would seriously prejudice the defendant in the eyes of the jury. United States v. James, 1999 WL 96719, at *3 (6th Cir. 1999) (unpublished op.).[12]

---

[12] I have, not surprisingly, found few cases applying Rule 404(b) to similar circumstances. For this issue to arise, an ex-felon must be found possessing a gun in close proximity to drugs or some other contraband. He must then be federally prosecuted for possessing the gun but not for

19

However accurate this intuition may be in general, I think it is certainly true here in light of the way in which the trial unfolded. In his opening statement, Shelley's counsel told the jury:

> [Shelley] has two prior felonies. Those are drug-related charges. He has an addiction. He had an addiction. And he is in a halfway, and

---

possessing the additional contraband. Finally, he must deny having knowingly possessed the gun despite some likelihood that he did knowingly possess the other contraband.

Nonetheless, the authority that I have found supports what I believe is intuitively obvious: such evidence is admissible for the purpose of showing knowing possession. For example, in a prosecution for transporting firearms, the Eighth Circuit upheld admission of three baggies of marijuana, drug paraphernalia, stolen pharmaceutical drugs, and burglary tools found next to the firearms because they were relevant to show that the defendant knowingly possessed the guns, which he denied. United States v. Richards, 967 F.2d 1189, 1192-94 (8th Cir. 1992). And, in an unpublished decision in a felon-in-possession case, the Sixth Circuit upheld admission of two baggies of marijuana for the purpose of establishing knowing possession of the gun. James, 1999 WL 96719, at *2-3. In that case, the arresting officer discovered the gun under the seat of the defendant's car. "As he removed the firearm, it snagged on two baggies, which turned out to contain relatively small quantities of marijuana. . . . [The defendant] testified that he had hidden the marijuana under the seat but that he was not aware of the presence of the revolver." His defense was that the gun belonged to his wife. Id. at *1. The Sixth Circuit agreed with the trial court that the marijuana was admissible because it was "probative," though "not determinative," on the issue of intent. Id. at *2. Moreover, the court doubted that "possession of a relatively modest amount of marijuana, even if thought to be for distribution," would seriously prejudice the defendant in the eyes of the jury. Id. at *3.

These cases are factually different from the instant case in a few minor respects. In both, the admitted contraband was more clearly connected to the defendant than the marijuana in this case is to Shelley. Richards, 967 F.2d at 1192; James, 1999 WL 96719, at *2. As explained in the text, though, I have no doubt that a jury could reasonably find that Shelley knowingly possessed the marijuana. Moreover, the Eighth Circuit case actually upholds the admission of 404(b) evidence more prejudicial than is at issue here, namely, burglary tools and stolen pharmaceutical drugs in addition to a small amount of marijuana. Richards, 967 F.2d at 1193. The cases are also distinguishable in that both approve of the admission of 404(b) evidence rather than disapprove of its exclusion. See Richards, 967 F.2d at 1194 ("It is clear . . . that the District Court did not abuse its discretion in admitting the evidence . . . ."); James, 1999 WL 96719, at *2. Of course, because the Government generally cannot appeal adverse evidentiary rulings, appellate courts rarely review orders excluding such evidence. Thus, despite these differences, I find the reasoning of these opinions persuasive.

20

he has completed a program of sobriety which we will show you a certificate. He has done that. He has completed his program.

Given that his own lawyer had already announced that Shelley was still "in a halfway house," I seriously doubt that the jury would have been too surprised to learn that he had a <u>small amount</u> of marijuana in his car when he was arrested on his way home from the Footwash <u>nearly a year before the trial</u>. Indeed, after counsel's vague statement that Shelley had two "drug-related" convictions, a clarification that he only had a small amount of marijuana might have been more helpful than prejudicial.

Although we review this ruling under an abuse of discretion standard, "the court's discretion to exclude evidence under Rule 403 is narrowly circumscribed. Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence. The balance under the Rule, therefore, should be struck in favor of admissibility." <u>United States v. Norton</u>, 867 F.2d 1354 (11th Cir. 1989) (internal citations and quotation marks omitted). The Government should have been able to introduce the marijuana evidence and to explore Shelley's inability to account for its presence next to the gun. This evidence is plainly relevant to an issue other than Shelley's character, it is not unfairly prejudicial, and it is thus admissible under Rule 404(b)

21

and Beechum. I would, therefore, hold that the district court abused its discretion initially by excluding the evidence and that it necessarily abused its discretion again when it dismissed the indictment because of the Government's violation of that ruling. See United States v. Jordan, 316 F.3d 1215, 1257-58 (11th Cir. 2003) ("[T]he district court misapplied the Brady and Giglio rules as well as the Jencks Act. The court therefore abused its discretion to the extent that it . . . dismissed the indictment on the ground that the prosecutor grievously mishandled the Government's discovery obligations created by those cases and the statute.").

In sum, I agree that "the prosecutor had an arguable basis for" the question asked so that it did not constitute "egregious" or "flagrant" misconduct, ante at 11; thus, it was an abuse of discretion for the district judge to dismiss the indictment on account of it.[13] Id. at 1248-49 ("The dismissal of an indictment on the ground

---

[13] There is yet another reason why this action constituted an abuse of discretion. We have held that "prejudice to the defendant is an essential element when a criminal defendant seeks dismissal of an indictment due to prosecutorial misconduct." United States v. O'Keefe, 825 F.2d 314, 318 (11th Cir. 1987). If dismissal is appropriate only if the defendant can show prejudice, it only makes sense that the prejudice he must show must be prejudice that the dismissal will remedy. The only unfair prejudice Shelley could possibly show occurred at trial. Any such prejudice could have been completely cured simply by declaring a mistrial (assuming that a curative instruction alone would not have been sufficient); dismissing the indictment was thus unnecessary even assuming prejudice. If prosecutorial misconduct occurs during trial, a court must consider whether the misconduct has prejudiced the defendant's right to a fair trial. If it has, and if the prejudice cannot be remedied by a curative instruction, the court should declare a mistrial. Furthermore, if the prosecutor intended to goad the defendant into seeking a mistrial, the court may dismiss the indictment with prejudice for the reason that retrial would violate the Double Jeopardy clause. Oregon v. Kennedy, 456 U.S. 667, 676, 102 S. Ct. 2083, 2089, 72 L. Ed. 2d 416 (1982). Otherwise, dismissing the indictment only makes sense if the prosecutorial

22

of prosecutorial misconduct is a discretionary call; we therefore review the court's action for abuse of discretion." (footnote omitted)). In truth, however, we need not reach this question because an order dismissing an indictment for violating a ruling that was itself an abuse of discretion is necessarily an abuse of discretion.

## II.

Even assuming that the admissibility of the marijuana was debatable when it was addressed prior to the start of the trial, the issue should have become clear by the time Shelley's direct examination was complete. For this reason, when faced with a debatable evidentiary question, a district judge would be wise to reserve ruling on the issue until the correct resolution becomes clear, or at least as long as

---

misconduct has somehow infected the indictment itself, rather than only the trial. This is why most of our cases on this subject address misconduct in grand jury proceedings. See generally, e.g., United States v. Accetturo, 858 F.2d 679 (11th Cir. 1988); United States v. Holloway, 778 F.2d 653 (11th Cir. 1985); United States v. Hyder, 732 F.2d 841 (11th Cir. 1984); United States v. Pabian, 704 F.2d 1533 (11th Cir. 1983).

One might argue that a court should have the option of dismissing an indictment as a sanction for prosecutorial misconduct during trial that, although not of the type that precludes retrial under the Double Jeopardy Clause, is sufficiently serious to warrant some greater sanction than a simple mistrial. But this argument lacks support in our precedent. Under O'Keefe, we require the defendant to show prejudice, O'Keefe, 325 F.3d at 318; and this requirement would make little sense if the dismissal of an indictment is merely an enhanced sanction imposed in cases in which prosecutorial misconduct is somewhat worse than that which would ordinarily justify a mistrial. This requirement instead suggests that dismissing an indictment serves to remedy prosecutorial misconduct that causes or contributes to an indictment, just as a mistrial serves to remedy prosecutorial misconduct that prejudices the defendant's right to a fair trial. Indeed, whether a court grants or denies a defendant's motion for a mistrial is not dependent on the seriousness of the prosecutorial misconduct, but rather is dependent on whether a mistrial is necessary to protect the defendant's right to a fair trial. There are, of course, other avenues for sanctioning serious prosecutorial misconduct that do not result in windfall to a defendant who has not been prejudiced by the misconduct.

23

is practically possible.  See supra note 1.  In any event, whenever a district court makes an in limine evidentiary ruling prior to trial, it is always subject to reconsideration based on what happens at trial.

One of our primary concerns in Beechum was that a defendant should not be allowed to turn the shield of Rule 403 into a sword: "It is derogative of the search for truth to allow a defendant to tell his story of innocence without facing him with evidence impeaching that story.  A basic premise of our adversary system of justice is that the truth is best attained by requiring a witness to explain contrary evidence if he can."  Beechum, 582 F.2d at 909; cf. Harris v. New York, 401 U.S. 222, 226, 91 S. Ct. 643, 646, 28 L. Ed. 2d 1 (1971) ("The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from risk of confrontation with prior inconsistent utterances.  We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflict statements.").  This is precisely what the district court sanctioned here. Although Shelley's claims regarding the gun and the marijuana are not in irreconcilable conflict, neither was Beechum's claim regarding the silver dollar in irreconcilable conflict with his lengthy possession of the credit cards.  The point is that in each case the extrinsic offense evidence tended to undermine the theory of the defense, and the defendant should not be able to testify in support of his theory

24

without facing that evidence. As such, whatever arguable basis for exclusion Rule 403 may have provided Shelley at the outset of the trial, it should have been clear that <u>Beechum</u> did not allow him to use that protection to testify free from having to face evidence that was inconsistent with his story.

Because the district judge abused his discretion in excluding the marijuana evidence from the Government's case-in-chief and, even more clearly, by refusing to permit questioning on this point during Shelley's cross-examination, I dissent from Part IV of the majority opinion.