[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 3, 2010
JOHN LEY
CLERK

Nos. 09-11354 and 09-13811
Non-Argument Calendar

_____

D. C. Docket No. 08-00318-CR-T-27-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES JACKSON FRIEDLANDER,
a.k.a. Charles Friedlander,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(September 3, 2010)

Before EDMONDSON, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Charles Jackson Friedlander appeals his conviction and 360-month sentence for child enticement, 18 U.S.C. § 2422(b). No reversible error has been shown; we affirm.[1]

At Friedlander's first trial, the prosecutor mistakenly thought she had a more recent copy of the Diagnostic and Statistical Manual of Mental Disorders, Volume IV ("DSM IV") than Friedlander's expert witness. And when cross-examining the expert about the definition of "sadism," the prosecutor asked the expert why he did not have the most recent copy. The two both read from the copyright page of the prosecutor's copy of the DSM IV and concluded that the prosecutor's copy was more recent than the expert's. The prosecutor used this information in closing argument to argue that the expert was not credible. After a jury convicted Friedlander, the prosecutor notified the court that she had been mistaken about the DSM IV and that, in fact, the expert had the more recent copy. This revelation prompted Friedlander to move for a mistrial, which the district court granted.

Friedlander argues that his second trial violated the Double Jeopardy Clause

_____

[1]The instant offense stemmed from online and telephone conversations between Friedlander and an undercover detective. Through these contacts, Friedlander made plans to abuse physically and sexually two children.

2

because the prosecutor acted grossly negligent in mistaking the publication date of the DSM IV and goaded him into moving for a mistrial. We review de novo a possible violation of the Double Jeopardy Clause. United States v. Thurston, 362 F.3d 1319, 1322 (11th Cir. 2004).

In general, when a defendant moves for a mistrial, the Double Jeopardy Clause is not implicated. United States v. Shelley, 405 F.3d 1195, 1200 (11th Cir. 2005). But a narrow exception exists -- and double jeopardy principles may bar the relitigation of a case -- if the prosecutor intentionally misbehaved for the specific purpose of goading the defendant into moving for a mistrial. Oregon v. Kennedy, 102 S.Ct. 2083, 2088-89 (1982).

That the prosecutor mistook the zip code entry on the DSM IV copyright page for the publication date was not tantamount to goading intentionally Friedlander into moving for a mistrial. Both the defense witness and the prosecutor misread the copyright page. And as soon as she learned of her mistake, the prosecutor informed the court and opposing counsel. Nothing evidences that her misreading of the page was purposeful or intended to provoke a mistrial.[2]

---

[2]Friendlander characterizes the prosecutor's conduct as gross negligence. But the district court concluded that the mistake was unintentional. And a district court's finding that a mistake was unintentional or not grossly negligent "is factual, binding upon the court of appeals unless clearly erroneous." See United States v. Serra, 882 F.2d 471, 473 (11th Cir. 1989).

3

About his second trial, Friedlander argues that the district court erred by (1) admitting prejudicial photographs and electronic correspondence in violation of Fed.R.Evid. 403 and 404(b); (2) allowing a detective to testify to the ultimate issue of whether Friedlander's realization of the contemplated sadomasochistic sex with the children would have been a violation of Florida law; and (3) precluding expert testimony about the clinical diagnoses of pedophilia and sexual sadism and the prevalence of sexual fantasy on the internet. We review a district court's evidentiary rulings for an abuse of discretion. United States v. Docampo, 573 F.3d 1091, 1096 (11th Cir. 2009), cert. denied, No. 09-7833 (2010). We will not reverse an evidentiary ruling if "sufficient evidence uninfected by any error supports the verdict, and the error did not have a substantial influence on the outcome of the case." United States v. Khanani, 502 F.3d 1281, 1292 (11th Cir. 2007).

The district court abused no discretion in admitting the photographs and Friedlander's electronic correspondence with other adults discussing sadomasochistic sex. The discussions referred to similar conduct as that discussed in the charged offense. For instance, Friedlander discussed using the same sexual accessories (such as riding crops, leather belts, and razor strops) on the children that he discussed in the on-line chats. And the photographs depicted bondage-

4

related imagery nearly identical to acts which Friedlander said he would perform on the children. This evidence was highly probative of Friedlander's intent to abuse physically and sexually children. See Fed.R.Evid. 404(b) (allowing evidence of other bad acts to show intent); United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) (a similarity between the prior act and the charged offense will make the other bad act highly probative about a defendant's intent in the charged offense). Given the highly probative nature of the evidence and that the court limited the evidence to that related directly to the instant offense, the evidence was not subject to exclusion under Rule 403. See United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003) (explaining that Rule 403 is "an extraordinary remedy which the district court should invoke sparingly," with the balance struck in favor of admissibility).

The detective's conclusion -- that if Friedlander had carried out his stated conduct, it would have been a violation of Florida law -- was a central element of Friedlander's guilt or innocence. See Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990) ("[a] witness may not testify to the legal implications of conduct"). But any error in admitting the testimony was harmless. The court instructed the jury that the court, not the parties or witnesses, was the sole source of legal standards applicable to the case and that the jury was not

5

bound to accept the testimony or conclusions of any witness. See Maiz v. Virani, 253 F.3d 641, 667 (11th Cir. 2001) (concluding that admitting a witness's legal conclusions was harmless when the court instructed the jury that it was not bound to accept the witness's conclusions and confirmed the court as the sole source of applicable legal standards). And the court explained to the jury that it had to find each element of the crime beyond a reasonable doubt, including that the conduct, if completed, would have been a criminal offense under Florida law.

About the expert testimony, the district court committed no error in precluding testimony about the prevalence of "internet fantasy." The court noted that the expert's opinion was unreliable as it was not based on the DSM IV or quantifiable scientific methodology. See United States v. Henderson, 409 F.3d 1293, 1302 (11th Cir. 2005) (unreliable testimony that is not based on accepted scientific methodology may be excluded).

Friedlander did not preserve his claim about the testimony on the clinical definitions of sadism and pedophilia. At trial, the detective testified that Friedlander's post-arrest interview included talk of sadomasochism.

Friedlander moved the court to expand its pre-trial limitation on the expert's testimony and allow the expert to testify that, from a medical perspective, Friedlander was not a sexual sadist. The court reserved ruling on the motion and

6

allowed Friedlander the opportunity to address the issue by proffer when and if he chose to call the expert as a witness. But Friedlander did not call the expert; so, the district court never ruled on the objection and motion that are the bases for Friedlander's instant argument. See United States v. Khoury, 901 F.2d 948, 966 (11th Cir. 1990) (explaining that parties must re-raise objections with particularity when an issue becomes ripe and that the overruling of a motion in limine about hypothetical concerns does not suffice; if a party fails to do so, our review is for plain error). Here, the only way to evaluate prejudice adequately would be to compare the expert's actual testimony to the proffered testimony that the court might have disallowed. Thus, given Friedlander's failure to re-raise his objection and that our review would only be speculative, we cannot say the district court plainly erred.

We now address Friedlander's challenge that his sentence substantively is unreasonable. We evaluate the substantive reasonableness of a sentence under an abuse-of-discretion standard. Gall v. United States, 128 S.Ct. 586, 597 (2007). The party challenging the sentence bears the burden of establishing that the sentence is unreasonable in the light of both the record and the 18 U.S.C. § 3553(a) factors. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).[3]

---

[3]Under section 3553(a), a district court should consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to provide

We conclude that Friedlander's 360-month sentence -- which fell in the middle of the applicable guidelines range -- was reasonable. See id. (noting that "ordinarily we would expect a sentence within the Guidelines range to be reasonable"). The district court stated that it had considered the section 3553(a) factors and noted that the nature and circumstances of Friedlander's offense were "despicable" and that the sentence imposed reflected the seriousness of the offense and promoted respect for the law. "The weight to be accorded any given [section] 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotation and citation omitted).

Given that Friedlander was convicted of using interstate communication in an attempt to coerce two children into sadomasochistic sexual acts, we cannot say that the within-range sentence failed to reflect the purposes of sentencing or that the district court committed "a clear error of judgment in weighing the [section] 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." See United States v. Pugh, 515 F.3d

adequate deterrence, respect for the law, and protection of the public, policy statements of the Sentencing Commission, provision for the medical and educational needs of the defendant, and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553(a)(1)-(7).

1179, 1203 (11th Cir. 2008).

AFFIRMED.[4]

---

[4]We reject Friedlander's challenge that section 2422(b) is unconstitutional because (1) he had no contact with a minor and, thus, lacked the necessary intent, and (2) the statute's application violates his right to free speech. These arguments squarely are foreclosed by our precedent. See United States v. Murrell, 368 F.3d 1283, 1287-88 (11th Cir. 2004) (expressly concluding that a conviction under section 2422(b) requires neither direct communication with a minor nor an actual victim); United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004) (explaining that "[s]peech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime").