UNITED STATES of America,
Plaintiff-Appellant,

v.

Larry E. SPEARS; Matthew D. Jordan; Albert E. Williams; Anthony Q. Gibson, Defendants-Appellees.

Nos. 86–7078, 86–7224.

United States Court of Appeals, Eleventh Circuit.

Sept. 15, 1987.

John C. Bell, U.S. Atty., David L. Allred, Asst. U.S. Atty., Montgomery, Ala., Irving Gornstein, Wm. Bradford Reynolds, Mark L. Gross, U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., for plaintiff-appellant.

David Cromwell Johnson, Birmingham, Ala., for Spears.

H. Lewis Gillis, Montgomery, Ala., for Jordan.

Ronald Wise, DeMent & Wise, Montgomery, Ala., for Williams.

Johnny Hardwick, Montgomery, Ala., for Gibson.

Before HILL and JOHNSON, Circuit Judges, and HENLEY *, Senior Circuit Judge.

* Honorable J. Smith Henley, Senior U.S. Circuit     Judge for the Eighth Circuit, sitting by designa-

HILL, Circuit Judge:

On June 13, 1983, a riot occurred at the Kilby Correctional Facility in Alabama. This appeal involves the federal prosecutions of prison officials who are charged with excessive use of force in stopping the riots and in operation of the prisons during a period of several days after the riots. Perjury charges also resulted from testimony which various prison officials gave before the grand jury.

In December of 1985, the matter was heard before a jury. Three of the seven defendants were acquitted; the jury was unable to reach a verdict as to the remaining defendants, and a mistrial was entered as to these four defendants. After scheduling a new trial, the district court judge wrote the Assistant Attorney General of the Civil Rights Division and requested that the case be dropped. On January 29, 1986, William Bradford Reynolds responded by letter and informed the court that the charges would not be dropped; the government proceeded to make a motion *in limine* (1) to allow government witnesses to explain why prior inconsistent statements were made, and (2) to allow the government to introduce evidence of other incidents in which the defendants abused prisoners. With regard to the first motion, the government contended that prison guards who would testify at trial originally denied witnessing the assaults committed by defendants. The government argued these witnesses should be permitted to testify that their prior inconsistent statements were a result of fear of reprisals by prison officials. With regard to the second motion, the government wished to introduce evidence of other incidents occurring during this time period in which defendants assaulted inmates. This evidence included an incident in which guards required an inmate to crawl on the floor and bark like a dog. The district court denied these motions. The government gave notice of appeal on January 31, and the trial set for February 3 was postponed. Referring to the government's delay in making the motion *in limine*, prosecutorial misconduct, tion.

and imperfections in the government's case, the district court entered an order on February 27, 1986 dismissing the indictment with prejudice. This appeal followed.

## I. GOVERNMENT'S MOTION IN LIMINE

### A. Prior Inconsistent Statements Made by Witnesses

■ The motion *in limine* presented by the government reads as follows:

It is anticipated that the trial testimony of [the prison guards to be called] will be, in some instances more complete than prior statements furnished to state and federal investigators and in other instances inconsistent with prior statements furnished to these same investigators. The government intends to ask these witnesses the nature of the incomplete or inconsistent statement and intends to ask the witnesses to explain why the incomplete or inconsistent statement or statements were made. It is anticipated that the witnesses will offer the following explanations: (1) They did not wish to implicate fellow Department of Corrections employees in violation of the law and/or violation of Department of Corrections regulations. (2) They were afraid if they identified superior ranking prison officials and/or fellow correctional officers in violation of the law and/or violation of prison regulations, they would either lose their jobs with the Department of Corrections or their job status would otherwise be adversely affected, and (3) They were afraid for their personal safety if they implicated Department of Corrections employees in wrongdoing to state/federal investigators.

The district court characterized the government's motion as an effort to introduce the undisclosed mental processes of the witnesses which would be virtually immune to cross-examination. The district court proceeded to deny the motion. The court was in error on this point.

■ This circuit has repeatedly approved allowing prosecution witnesses to explain prior inconsistent statements. *See, e.g., United States v. Holland,* 526 F.2d 284, 285 (5th Cir.1976); *United States v. Holladay,* 566 F.2d 1018, 1019–20 (5th Cir.), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978). Such an explanation may include the witnesses' subjective fears and beliefs which resulted in the prior inconsistent statement. *United States v. Franzese,* 392 F.2d 954, 960 (2d Cir.1968), *vacated on other grounds,* 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969) (quoted with approval in *United States v. Cochran,* 499 F.2d 380, 388 (5th Cir.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975)). Furthermore, such testimony may be introduced on direct examination; the prosecution need not wait to rehabilitate the witness on re-direct. *United States v. Ziperstein,* 601 F.2d 281, 291–92 (7th Cir.1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980). The probative value of this evidence clearly outweighed its prejudicial impact; the district court abused its discretion by failing to grant this portion of the motion *in limine.*

### B. Exclusion of Other Acts of Misconduct

The government's motion *in limine* also sought permission to introduce evidence of "other crimes, wrongs, and acts" committed by various defendants. The government has narrowed the issue on appeal to whether the district court erred by failing to permit evidence that defendant Albert Williams ordered inmates to bark like dogs while on their hands and knees. This incident allegedly occurred in the presence of the other three defendants.

■ As the government notes in its brief, the primary issue which the jury must resolve in this case is whether the defendants' actions were a good faith attempt to maintain security or a malicious attempt to inflict punishment. The defend-ant's alleged conduct in requiring inmates to bark like dogs is highly relevant in determining whether the inmates were placed on hands and knees for security reasons or whether such conduct was merely to humiliate the inmates.

The probative value of this evidence outweighs its prejudicial impact. This point is virtually conceded by the defendants; the defendants, however, argue that the evidence was merely cumulative and therefore could be properly excluded by the trial court. No other evidence has been brought to our attention which would clearly demonstrate the intent and motive of the defendants. The evidence which the government sought to introduce was not cumulative. The suppression of this evidence constituted an abuse of discretion.

### II. DISMISSAL OF THE INDICTMENT

Dismissal of a criminal indictment based upon prosecutorial misconduct should only be resorted to in the rarest of circumstances. Such egregious circumstances do not exist in this case. The district court's dismissal of the indictment is reversed.[1]

■ The district court order sets forth four reasons for the dismissal. First, the district court chastised the government for filing a motion *in limine* and notice of appeal immediately prior to the start of the scheduled retrial. On December 15, 1985, the first trial resulted in a hung jury, thus necessitating a retrial which was scheduled for February 3, 1986. On December 27, 1985, the district court judge wrote the Assistant Attorney General for the Civil Rights Division and requested that the case be dropped. The case file was reviewed by the Justice Department which resulted in William Bradford Reynolds' letter of January 22 stating that the case would not be dropped. On January 23, the government filed a memorandum arguing that the government's witnesses should be permitted to explain prior inconsistent state-

---

1. The district court properly concluded that it had jurisdiction to consider a motion to dismiss the indictment, despite the pending interlocu-tory appeal before this court. *United States v. Gatto,* 763 F.2d 1040, 1049 (9th Cir.1985).

ments. On January 28, the motion *in limine* was filed. A subsequent motion was filed the following day. On January 30, the motions were denied. Notice of appeal was given January 31. Of necessity, the retrial scheduled for Feburary 3 was postponed.

An outline of these events shows that any delay was the result of the district court judge's letter requesting the indictment be dropped. The government attorneys handling this prosecution properly concluded that it would have been inappropriate to proceed with pre-trial motions prior to the Assistant Attorney General's response. The government cannot be faulted for delay in prosecuting the defendants.

 The second basis for the district court's dismissal of the indictment is its conclusion that the delay produced by an interlocutory appeal would infringe upon the defendant's right to a speedy trial. In *United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986), the Supreme Court concluded:

> [A]n interlocutory appeal by the Government ordinarily is a valid reason that justifies delay. In assessing the purposes and reasonableness of such an appeal, courts may consider several factors. These include the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime.

These issues weigh in favor of the government. The strength of the government's position is demonstrated by our holding as to the motion *in limine.* Clearly, the issues presented in this motion are important to the government's case; the credibility of the government's witnesses is a significant element in the government's case. Finally, the abuse of inmates by prison officials, as alleged in the indictment, constitutes a serious offense even if the crimes charged are misdemeanors. No speedy trial considerations are implicated by this interlocutory appeal.

 The third factor relied upon by the trial court was the prosecution's failure to disclose exculpatory material until immediately prior to trial. At the first trial, the district court concluded that any delay in disclosing this material was inadvertent. As such, it cannot form a basis for prosecutorial misconduct. In its final basis for the dismissal, the district court relied upon the confusion resulting from joining nineteen criminal counts against four defendants. Such confusion may justify a severance of the criminal charges but does not justify a dismissal. Additionally, confusion can be eliminated by properly instructing the jury. This appears to have been done in the first trial. The remaining "imperfections" which the district court judge found in the government's prosecution of this case were not so egregious as to require a dismissal and need no discussion here.

Finally, the government requests this court to reassign this case to a different district court judge on remand. Under the facts and circumstances of this case, such a reassignment is appropriate. We direct the Chief Judge for the United States District Court for the Middle District of Alabama to reassign this case on remand.

REVERSED and REMANDED.