**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**John TORKINGTON,**
**Defendant–Appellee.**

No. 88–5319.

United States Court of Appeals,
Eleventh Circuit.

June 7, 1989.

Dexter Lehtinen, U.S. Atty., Miami, Fla., Thomas O'Malley, Linda Collins Hertz, Asst. U.S. Attys., Ft. Lauderdale, Fla., for plaintiff-appellant.

Richard I. Bellis, Ft. Lauderdale, Fla., for defendant-appellee.

Before TJOFLAT and JOHNSON, Circuit Judges, and BROWN *, Senior Circuit Judge.

PER CURIAM:

This appeal arises from the district court's grant of defendant's motion for entry of judgment of acquittal under Fed.R. Crim.P. 29 on charges that defendant trafficked and attempted to traffic in counterfeit Rolex watches in violation of 18 U.S.C. A. § 2320(a). We reverse and remand with the direction that the case be reassigned to a different district judge.

## I. FACTS

In 1985, attorneys for Rolex Watch, U.S.A., filed a civil action in the Southern District of Florida alleging that merchants at the Thunderbird Flea Market in Fort Lauderdale, Florida, were selling counterfeit Rolex watches. The district court issued a temporary restraining order and an order authorizing Rolex Watch to seize counterfeit watches at the flea market. On June 23, 1985, five individuals, a lawyer and an investigator for Rolex Watch, two United States Marshals, and a Secret Ser-

vice Agent, approached a booth at the flea market manned by Torkington, his wife, and a repairman. The attorney read the seizure order to those present in the booth. Torkington directed the individuals to the watches identified in the seizure order and admitted he had been selling them. During the search, Torkington explained that he had purchased the watches for $20 to $25 apiece and sold them for between $30 and $35.

The indictment in this case was filed October 3, 1985, several months after the seizure of the counterfeit watches. On February 10, 1986, the district court dismissed the indictment with prejudice based on the conclusion that a false Rolex watch is not counterfeit as a matter of law within the meaning of 18 U.S.C.A. § 2320(d)(1). This Court reversed. *United States v. Torkington*, 812 F.2d 1347 (11th Cir.1987).

The case went to trial on February 29, 1988. Immediately before the attorneys for the government gave their opening statements, the district court granted defendant's motion to suppress all statements defendant made at the June 23, 1985, seizure of the counterfeit watches. The district court further ordered all witnesses to refrain from mentioning the prior civil enforcement action. During the presentation of the government's case, a prosecution witness referred to the prior civil enforcement action. Defense counsel immediately objected and moved for a mistrial. The district court asked defense counsel if this was a motion brought under Fed.R.Crim.P. 29. When defense counsel asserted that it was, the district court granted the motion and dismissed the case with prejudice. The court subsequently entered a written judgment of acquittal.

The government raises three issues on appeal. First, the government argues that the district court erred in granting defendant's motion for entry of judgment of acquittal; second, the government challenges the district court's evidentiary rulings; and third, the government argues

that the case should be reassigned to a different district judge on remand. The first issue we address is whether this Court has jurisdiction to entertain this appeal.

## II. DISCUSSION

### A. *Jurisdiction*

■ This Court has jurisdiction under 18 U.S.C.A. § 3731 to review adverse decisions in criminal cases to the extent not prohibited by the Double Jeopardy Clause of the Fifth Amendment. *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1018–19, 43 L.Ed.2d 232 (1975). In general, a judgment by the district court that the evidence is insufficient to sustain a guilty verdict constitutes an acquittal, and the Double Jeopardy Clause bars appeal and retrial by the prosecutor. *Smalis v. Pennsylvania,* 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986). That bar applies, however, only where the judgment represents a ruling on the merits of "some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977). If so, regardless of whether the district court erred, the Double Jeopardy Clause of the Fifth Amendment bars appeal and retrial. If not, however, this Court has jurisdiction to entertain the government's appeal even if reversal would require further factual inquiry into guilt or innocence. *See generally United States v. Scott,* 437 U.S. 82, 97, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978) (discussing Fed.R.Crim.P. 29(c)).

The district court in this case stated that it was granting defendant's motion for entry of judgment of acquittal, and characterized its order as issued under Fed.R. Crim.P. 29. Regardless of how the district court styled its order, however, it is clear that the court did not base its decision on the resolution of any of the factual elements necessary for conviction. This Court had already decided that the district court could not dismiss the indictment in this case for failure to allege an offense, *United States v. Torkington,* 812 F.2d at 1354–55, and the government had barely begun to present its evidence. We conclude that the Double Jeopardy Clause does not bar appeal and retrial in this case.

■ The government argues that the district court actually granted a mistrial and that this Court should remand the case for a new trial. In general, the Double Jeopardy Clause does not bar retrial after the grant of a mistrial on defendant's motion. If the defendant was compelled by the prosecution's actions to move for a mistrial, however, the Double Jeopardy Clause does bar retrial. *See generally United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). A defendant is compelled to move for a mistrial for Double Jeopardy Clause purposes if the prosecution intentionally took action designed to result in the defendant's mistrial motion. *Oregon v. Kennedy,* 456 U.S. 667, 675–76, 102 S.Ct. 2083, 2089–90, 72 L.Ed.2d 416 (1982). There is no allegation in this case that the prosecution intentionally goaded the defendant into moving for a mistrial. *See id.* at 676, 102 S.Ct. at 2089 ("Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."). However the district court's order is characterized, then, this Court has jurisdiction to entertain the government's appeal under section 3731.

### B. *Fed.R.Crim.P. 29*

■ The district court entered judgment of acquittal under Fed.R.Crim.P. 29(a) and dismissed this criminal prosecution. Rule 29(a) provides in pertinent part: "The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information *after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.*" (emphasis added) Rule 29(a) by its express terms includes two requirements. First, the motion can be granted only after the prosecution has presented its case. Second, the court must find the evidence insufficient to support a conviction. Neither of

these requirements is satisfied in this case. The district court granted the motion at the beginning of the prosecution's presentation of evidence, and the court granted the motion based on prosecutorial misconduct[1] rather than on insufficiency of the evidence. We hold that the district court erred in granting defendant's motion for entry of judgment of acquittal under Rule 29.

## C. *Evidentiary Rulings*

■ The district court ruled that statements made by Torkington during the seizure of the counterfeit watches were not admissible at trial.[2] At the time Torkington made these statements, he had not been informed of his Fifth Amendment rights. Under the Supreme Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the government must inform individuals in custody of their constitutional rights before interrogation. If an individual has not been informed of his rights under the Fifth Amendment, statements made while in custody are not admissible at trial. *See, e.g., Estelle v. Smith,* 451 U.S. 454, 466–69, 101 S.Ct. 1866, 1874–76, 68 L.Ed.2d 359 (1981). The primary concern in this area is the risk of government coercion in obtaining incriminating statements during custodial interrogation. *See, e.g., Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986).

■ The requirement that an individual receive *Miranda* warnings before answering questions applies only when the individual is in custody. *Roberts v. United States,* 445 U.S. 552, 560, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980). In order to be in custody, an individual must be subject to "formal arrest or restraint in freedom of

movement of the degree associated with a formal arrest." *Minnesota v. Murphy,* 465 U.S. 420, 430, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984) (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)). The determination whether an individual is in custody is made according to an objective, reasonable person standard. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The relevant inquiry in this case is whether a reasonable person in Torkington's position would have felt a restraint on his freedom equivalent to that normally associated with a formal arrest. *See United States v. Phillips,* 812 F.2d 1355, 1359–60 (11th Cir.1987). The district court's decision that Torkington was in custody is one of mixed law and fact. *United States v. Rioseco,* 845 F.2d 299, 302 (11th Cir.1988). Although the district court's factual conclusions are subject to a clearly erroneous standard of review, we review the application of the law to these facts *de novo. Id.*

The individuals executing the civil seizure order at the flea market were in the area of Torkington's booth for approximately two hours. Torkington was free to move about or leave the area during this time. Although Torkington may have felt uncomfortable leaving his booth for an extended period while the seizure was taking place, his hesitation in leaving the area did not result from the exercise of direct or implied coercive restraint by agents of the government. A reasonable person in Torkington's position would not have considered himself under arrest or subject to governmental restraint on his freedom of movement equivalent to that involved in a formal arrest. *See generally Berkemer v. McCarty, supra* (questioning during traffic

---

1. Dismissal of an indictment for prosecutorial misconduct is an extreme sanction which should be utilized only infrequently. *United States v. White,* 846 F.2d 678, 693 (11th Cir.), cert. denied, — U.S. —, 109 S.Ct. 537, 102 L.Ed.2d 568 (1988); *United States v. Spears,* 827 F.2d 705, 708 (11th Cir.1987) ("Dismissal of a criminal indictment based upon prosecutorial misconduct should only be resorted to in the rarest of circumstances."). There is not the kind of flagrant prosecutorial abuse in this case

that would justify dismissal. *See generally Spears,* 827 F.2d at 709; *United States v. Hyder,* 732 F.2d 841, 845 (11th Cir.1984).

2. This Court has jurisdiction to review this evidentiary ruling under 18 U.S.C.A. § 3731. *See, e.g., United States v. Posner,* 764 F.2d 1535, 1538 (11th Cir.1985) (section 3731 allows appeal of evidentiary rulings made by district court in original proceeding if case must be tried again).

stop not custodial interrogation); *United States v. Rioseco, supra* (questioning during Coast Guard boarding of vessel not custodian interrogation); *United States v. Phillips, supra* (statement at police station prior to being put under arrest not made during custodial interrogation). This is not a case where government agents disguised their investigation into Torkington's activities as routine questions. *See, e.g., United States v. Glen–Archila*, 677 F.2d 809, 816 n. 18 (11th Cir.) (answers to investigative questions asked in the guise of routine questioning are inadmissible if suspect has not been given *Miranda* warnings), *cert. denied*, 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 137 (1982). In fact, Torkington volunteered many of the incriminating statements without prompting. *See United States v. Jonas*, 786 F.2d 1019, 1022 (11th Cir.1986) (voluntary statements made by persons not in custody generally are not barred by the Fifth Amendment). We conclude that the district court erred in holding this evidence inadmissible.

### D. *Reassignment on Remand*

■ The government argues that this case should be remanded with the instruction that it be reassigned to a different district judge. We have the authority to order reassignment of a criminal case to another district judge as part of our supervisory authority over the district courts in this Circuit. *See* 28 U.S.C.A. § 2106; *see, e.g., United States v. Spears*, 827 F.2d 705 (11th Cir.1987); *see generally Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954) (Court remanded case with direction to reassign to different district judge because trial judge had "failed to represent the impersonal authority of law."). Reassignment is appropriate where the trial judge has engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public. *United States v. White*, 846 F.2d 678 (11th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 537, 538, 102 L.Ed.2d 568 (1988).

■ The district judge has the initial responsibility to recuse himself from a case. Under 28 U.S.C.A. § 455(a), a judge must recuse himself in circumstances that give rise to a reasonable inference of impropriety or lack of impartiality. *Liljeberg v. Health Services Acquisition Corp.*, — U.S. —, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The test on appeal for determining whether a judge should have recused himself under section 455(a) is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir.1988). If the trial judge should have recused himself and the case is remanded, it should be remanded with the direction that it be reassigned to a different district judge. *Id.*

■ Section 455 relates to recusal based on circumstances existing prior to or at the time of the judge's participation in a case; this case involves reassignment because of the judge's own conduct during his participation in a case. Although the events that make it necessary to terminate a judge's participation in a case differ in the two situations, the reason the judge should not participate is the same: the judicial system has the obligation of preserving public confidence in the impartial and fair administration of justice. If a district judge's continued participation in a case presents a significant risk of undermining this public confidence, this Court has the authority and the duty to order the case reassigned to a different district judge. Reassignment may be appropriate, for example, if a judge conducts a trial in a manner that creates the appearance that he is or may be unable to perform his role in an unbiased manner, *United States v. White*, 846 F.2d at 695 ("[W]here a reasonable person would question the trial judge's impartiality, reassignment is appropriate."); *United States v. Holland*, 655 F.2d 44 (5th Cir. Unit B 1981) (remarks by judge during trial may give rise to inference of bias or prejudice), or if the judge has demonstrated that he is unwilling to carry out the law in a particular case. *Brooks v. Central Bank of Birmingham*, 717 F.2d

1340, 1343 (11th Cir.1983) ("stalemated posture" required reassignment of case to different judge).

 We consider at least three elements in determining whether to reassign a case to a different judge based on the original judge's actions at trial where there is no indication of actual bias: (1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to gains realized from reassignment. *White,* 846 F.2d at 696 (quoting *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (en banc)). After considering these elements, we conclude that this case should be reassigned to a different district judge. The judge in this case has been reversed once by this Court, 812 F.2d 1347, and dismissed the case at the first opportunity by construing a motion for mistrial as a motion for entry of judgment of acquittal. The judge from the bench questioned the wisdom of the substantive law he had to apply and challenged the government's decision to prosecute Torkington. For example, the judge stated at various times that he felt the taxpayer had little interest in this type of suit, that this prosecution was "silly," and that it was a waste of the taxpayers' money. He also termed the prosecution a "vendetta" by Rolex Watch against the defendant. We conclude both that the trial judge has demonstrated great difficulty in putting aside his prior conclusions about the merits of this prosecution and that reassignment is necessary to preserve the appearance of impartiality. The third element does not work against reassignment in this case. This is a simple case with which a different judge could quickly become familiar, and the district judge terminated the trial shortly after it began.

We do not question the district judge's actual ability, integrity, and impartiality. Rather, we respond to the appearance of a lack of neutrality and act to preserve in the public mind the image of absolute impartiality and fairness of the judiciary. We do not order this case reassigned lightly. However, we must preserve not only the reality but also the appearance of the proper functioning of the judiciary as a neutral, impartial administrator of justice. Consequently, we remand this case with the direction that it be reassigned to a different judge.

## III. CONCLUSION

The district court's dismissal of this case is REVERSED and the case is REMANDED for a new trial. The district court's decision that Torkington's statements at the time of the seizure of the counterfeit watches are inadmissible is REVERSED. We remand with the direction to the Chief Judge of the Southern District of Florida that the case be REASSIGNED to a different district judge for further proceedings.