[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12363
Non-Argument Calendar

_____

D.C. Docket Nos. 2:11-cv-14429-KMM; 2:06-cr-14029-KMM-1


DERRICK COOPER,

                                                            Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

                                                            Respondent-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 18, 2016)

Before WILLIAM PRYOR, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Derrick Cooper, a federal prisoner serving a life sentence, appeals from the

district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct

his sentence.  The district court issued a certificate of appealability on Cooper's

claim that his trial counsel was ineffective during the plea bargaining process.  On

appeal, Cooper argues that the district court erred in determining that his counsel

was not constitutionally ineffective and requests that his case be reassigned to a

different judge on remand.  Cooper argues that his counsel rendered

constitutionally ineffective assistance when he advised Cooper to reject a plea

based on: (1) his belief that the specific judge assigned to the case would ignore the

mandatory minimum specified in the plea agreement and sentence Cooper to more

than forty years; and (2) his belief that Cooper had a viable public authority

defense.[1]  It is undisputed that, at the time counsel advised Cooper to reject the

plea offer, he had no specific information about Cooper's criminal history, had not

seen or reviewed any of the discovery in the case, and had no understanding of the

evidence against Cooper.  Furthermore, it is undisputed that Cooper did not have a

viable public authority defense.  We therefore conclude that counsel's performance

was deficient and that Cooper was prejudiced by that deficient performance.  We

vacate and remand, but do not grant Cooper's request for reassignment.

---

[1] Under the public authority defense, "the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in a covert activity."  United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994).  The validity of this defense hinges on "whether the government agent in fact had the authority to empower the defendant to perform the acts in question."  Id.  "[R]eliance on the apparent authority of a government official is not a defense in this circuit, because it is deemed a mistake of law, which generally does not excuse criminal conduct."  Id.

2

I.

Cooper first argues that his counsel, Michael Walsh, rendered deficient performance not only because his advice to Cooper was objectively unreasonable, but also because he had not sufficiently familiarized himself with the facts and law of the case when he gave that advice.

To state a claim for ineffective assistance of counsel, a prisoner must satisfy the two-pronged test outlined in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  Under Strickland, a prisoner must show that counsel's performance was deficient, and that he was prejudiced by counsel's deficient performance.  Id.  Performance is deficient when it falls below "an objective standard of reasonableness" and is "outside the wide range of professionally competent assistance."  Johnson v. Sec'y, DOC, 643 F.3d 907, 928 (11th Cir. 2011) (quotations omitted).  Review of counsel's performance is highly deferential, and we presume that counsel's conduct fell within the range of reasonable professional assistance.  Id.

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland, 466 U.S. at 691, 104 S. Ct. at 2066.  "[S]trategic choices made after less than complete investigation are

3

reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690–91, 104 S. Ct. at 2066.

An attorney's decision to limit his investigation "must flow from an informed judgment." Baxter v. Thomas, 45 F.3d 1501, 1514 (11th Cir. 1995) (quotation omitted). It is not per se deficient performance for an attorney to rely on his client's statements concerning his criminal history instead of independently running a criminal records check. See United States v. Pease, 240 F.3d 938, 941–42 (11th Cir. 2001) (per curiam). Rather, whether reliance on a client's statement of his own criminal history constitutes deficient performance is fact-specific. Id. at 942.

"When a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." McCoy v. Newsome, 953 F.2d 1252, 1262–63 (11th Cir. 1992) (per curiam) (quotation omitted) (alteration adopted). And "[t]he failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the Strickland analysis[,] as such an omission cannot be said to fall within the wide range of professionally competent assistance." Finch v. Vaughn, 67 F.3d 909, 916 (11th Cir. 1995) (quotation omitted) (alteration adopted).

When ineffective advice leads a defendant to reject a plea offer, the defendant must show that, but for counsel's deficient performance, there is a

4

reasonable probability that: (1) the plea offer would have been presented to the court; (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were imposed.  Lafler v. Cooper, __ U.S. __, __, 132 S. Ct. 1376, 1385 (2012).  To show the first element, the defendant must demonstrate that he would have accepted the plea, and that the government would not have withdrawn it in light of intervening circumstances.  Id.

## II.

## A.

The parties stipulated to the relevant facts of the underlying criminal trial.[2] The parties agreed that Cooper initially retained Stephen Rogers to represent him. The government proposed a plea offer in which it agreed to dismiss the remaining counts in the indictment if Cooper pleaded guilty to Count 1.  In addition, the government agreed to file a statutory sentencing enhancement pursuant to 21 U.S.C. § 851 for only one of Cooper's prior convictions, rather than for multiple convictions.  This compromise would have resulted in Cooper facing a statutory

---

[2] The government points out several conflicts between the testimony at the evidentiary hearing on Cooper's § 2255 motion and the parties' stipulated facts.  However, the government cannot now argue that the stipulated facts are incorrect, because it has already admitted those facts to be true.  See Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez, 561 U.S. 661, 677–78, 130 S. Ct. 2971, 2983 (2010) ("[F]actual stipulations are formal concessions . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." (quotation omitted) (alteration in original)).  The district court was bound by the factual stipulations, as is this Court.

mandatory minimum sentence of 20 years, rather than a mandatory life sentence. The plea agreement also contained a stipulation that "the parties would jointly recommend that, for purposes of sentencing, the quantity of narcotics attributable to [Cooper] was at least 150 grams but less than 500 grams of crack cocaine." The parties also agreed that Cooper would receive a 3-level sentencing enhancement for his managerial role in the offense.

The stipulated facts further indicated that Rogers met with Cooper and reviewed the terms of the proposed plea agreement with him. At that meeting, Cooper indicated that he was "likely going to accept" the plea offer but wanted time to consult with his family. Because the deadline was fast approaching, Cooper executed the plea agreement and gave it to Rogers with the understanding that Rogers would submit it if Cooper did not change his mind about accepting the plea offer after speaking with his family.

Following Cooper's meeting with Rogers, a fellow inmate suggested that Cooper speak to attorney Michael Walsh about his case. Cooper met with Walsh and informed him about the proposed plea agreement. Walsh "strongly advised" Cooper to reject the offer, because Walsh was "confident" that, despite the agreement, "Judge Moore would sentence him to 'forty plus years.'" At the evidentiary hearing, Walsh testified that based on his experience with this District Judge, the applicable Guidelines, the amount of drugs involved, and "the evidence

6

you were saying you had," he thought Cooper was "going to get railed." Walsh testified that he "thought Judge Moore would have launched [Cooper] and that he would go to prison for three decades or more based upon his priors."

According to the parties' stipulated facts, at the time Walsh made those statements to Cooper, "he had not seen or reviewed any of the discovery in the case and was unfamiliar with the evidence against [Cooper]." Rogers testified that he attempted to transfer thousands of pages of evidence and numerous recordings to Walsh, but Walsh would not accept any discovery until his financial arrangements with Cooper were finalized.

The parties also stipulated that, during the initial meeting between Walsh and Cooper, Walsh learned that Cooper had been working as a confidential informant for the police department, and, "[w]ithout reviewing any of the discovery in the case and without an understanding of the underlying evidence against [Cooper] . . . , Walsh advised [Cooper] that he had a viable 'public authority' defense." Walsh also testified that he believed that the police officers who were supervising Cooper's work as a confidential informant were "dirty." He conceded that "dirty" cops do not have the authority to tell people to commit crimes, so Cooper therefore was not working under real public authority.

Based on Walsh's advice, Cooper fired Rogers and hired Walsh, effectively rejecting the plea offer. Soon after that, Walsh filed a notice of appearance and a

notice of a public authority defense.  Only after Cooper rejected the plea agreement and worked out his financial arrangements with Walsh did Walsh receive a copy of the discovery.  When the deadline for accepting the government's plea offer expired, the government filed a statutory sentencing enhancement pursuant to § 851 based on two of Cooper's prior convictions, thus increasing his statutorily mandated minimum sentence to life imprisonment.  Cooper proceeded to trial relying on the public authority defense, was convicted of all counts, and was sentenced to life in prison.

Walsh testified that Cooper "at all times wanted to plead guilty."  Cooper corroborated this assertion, testifying that "he always desired and intended to plead guilty," and that "he never wanted to proceed to trial."  However, he did so based upon Walsh's advice that the District Judge would sentence him harshly even with a plea agreement and that he had a viable public authority defense.

B.

After an evidentiary hearing, the government informed the magistrate judge that it could not legitimately argue that Walsh's performance was not deficient, or that Cooper was not prejudiced by the deficient performance.  The magistrate judge concluded that Cooper had established both deficient performance and prejudice, and entered a report and recommendation ("R&R") proposing that the

8

district court grant Cooper's § 2255 motion and that the government reoffer the plea agreement.

The district court held its own hearing on Cooper's claim. During a colloquy with Cooper's appointed counsel, the district court suggested that Walsh was being "[v]ery conveniently truthful after the fact" about his deficient advice to Cooper. The district court suggested that Walsh was "fall[ing] on the sword for his client" so that "the client gets the benefit of the attorney's professed ineffectiveness." The district court ultimately adopted the findings of fact contained in the R&R. But, after concluding that it was not clear that Cooper would have accepted the plea offer presented by the government, the district court held that counsel's performance was not so deficient as to constitute ineffective assistance.

## III.

The district court erred in finding that Cooper's trial counsel was not constitutionally ineffective during the plea bargaining process. As a threshold issue, we reject the government's argument that Walsh's performance should be judged starting on the day that he filed his notice of appearance because he could not be ineffective before he had officially been retained. Walsh gave legal advice to Cooper about his case prior to entering a notice of appearance. The stipulated facts demonstrate that Cooper relied on Walsh's advice in rejecting the plea offer.

The fact that Walsh delayed filing a notice of appearance until he and Cooper worked out their financial arrangements is not fatal to Cooper's claim for ineffective assistance of counsel.

Walsh performed deficiently in at least three separate ways. First, Walsh's decision not to investigate Cooper's criminal history did not flow from an informed judgment. See Baxter, 45 F.3d at 1514. Rather, Walsh's decision not to investigate stemmed from his refusal to review any discovery before he had been paid for his services. Furthermore, his advice was outside the range of professional competence. See Johnson, 643 F.3d at 928. Strategic choices, such as whether to reject a plea offer, must be based on a thorough investigation of the law and facts relevant to the plausible options before the defendant. See Strickland, 466 U.S. at 690–91, 104 S. Ct. at 2066. A general knowledge of the Sentencing Guidelines and the fact that Walsh was "experienced" is not an adequate substitute for actual investigation of the law and the defendant's criminal history. While general experience may inform the advice counsel gives a defendant, it is not the basis for knowing a defendant's actual legal exposure.

Second, Walsh's advice concerning a public authority defense was unreasonable. Reliance on the apparent authority of a police officer to empower covert activity is a mistake of law and does not excuse criminal conduct. See Baptista-Rodriguez, 17 F.3d at 1368 n.18. Walsh conceded that he believed the

10

police officers Cooper was working with were "dirty." If he believed that, he should have known that Cooper did not have a "viable" public authority defense. The government correctly points out that "in cases involving 'perceived governmental authority,' the defendant may argue his innocent intent as a means to persuade the jury that the prosecution has not met its burden of proving his criminal intent." United States v. Alvarado, 808 F.3d 474, 486 (11th Cir. 2015). In other words, Cooper could have argued his innocent intent to "effectively backdoor the [public authority] defense by testifying that he genuinely believed that the criminal acts he performed were done at the direction . . . of an appropriate governmental agency." Id. However, the trial transcript makes clear that Walsh was not arguing that Cooper acted with innocent intent; he was pursuing the meritless argument that Cooper acted under actual public authority. Thus, the advice Walsh gave Cooper about the public authority defense, upon which Cooper relied in deciding to go to trial, was plainly wrong. Walsh's failure to inform Cooper that the relevant law precluded his public authority defense fell outside the range of professionally competent assistance. See Finch, 67 F.3d at 916.

Finally, Walsh rendered deficient performance by failing to conduct any research on the public authority defense before offering Cooper legal advice on the subject. Walsh did not testify that he was familiar with the public authority defense based on his prior experience or that he researched it after being contacted

11

by Cooper. Yet, he advised Cooper that it applied to his case. "When a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." McCoy, 953 F.2d at 1262–63 (quotation omitted) (alteration adopted). For these reasons, the district court erred in holding that Cooper failed to establish deficient performance.

Cooper also established that he was prejudiced by Walsh's deficient performance. First, the plea offer would have been presented to the court—the parties stipulated that, but for Walsh's ineffective assistance, Cooper would have accepted the plea agreement. In addition, there is no indication that the government would have withdrawn the plea. In fact, since the government agreed before the district court that Cooper was prejudiced and that the proper remedy was to reoffer the plea agreement, there is every indication that the government would not have withdrawn the plea. Second, there is no indication that the court would not have accepted its terms. Finally, under the terms of the plea agreement, Count 2 would have been dismissed and Cooper would have been subject to a mandatory minimum of 20 years' imprisonment, with a Guideline range of 240–293 months rather than a mandatory life sentence. Because Cooper has shown both that Walsh rendered deficient performance and that he was prejudiced by that performance, we

12

vacate the district court's order and remand for proceedings consistent with this opinion.

IV.

Cooper next argues that the District Judge, who presided over both Cooper's underlying criminal case and his § 2255 case, engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the minds of reasonable members of the public. For this reason, he requests reassignment.

We have the authority to order reassignment of a case to another district judge as part of our supervisory authority over the district courts in this Circuit. United States v. Torkington, 874 F.2d 1441, 1446 (11th Cir. 1989) (per curiam). Reassignment is appropriate where the trial judge has engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public. Id.

We consider at least three elements in determining whether to reassign a case to a different judge based on the original judge's actions at trial where there is no indication of actual bias: (1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to gains realized from reassignment. Id. at 1447. We normally expect the district judge to put his

previous views and findings aside, although that expectation might be unreasonable in a second or third appeal.  United States v. Shaygan, 652 F.3d 1297, 1318–19 (11th Cir. 2011).

Reassignment is not necessary in this case.  It is true that the circumstances of this case are unusual; Judge Moore entered an order that was contrary to the parties' agreement and to their stipulated facts.  Beyond that, his statements on the record suggesting that he believed that Walsh was lying about his ineffectiveness in order to allow Cooper to secure habeas relief are troubling.  However, considering the government's statement that Walsh's testimony had changed radically from pre-hearing interviews to the actual hearing, Judge Moore's actions and statements are not without some basis in the record.  Furthermore, this is the first appeal on Cooper's motion to vacate, and we normally expect the district court to put his previous views and findings aside on remand.

**VACATED AND REMANDED.**